All right, Madam Clerk, please call the next case for argument. Yes, Your Honor. The third case for argument is United States v. Roger Cooley. All right, Mr. Justinger. The Court appreciates your willingness to accept the appointment under the Criminal Justice Act in this case, and you may proceed. Thank you, Your Honor, and good morning, and may it please the Court. My name is Adam Justinger, and I represent the appellant in this matter, Mr. Roger Cooley. There's two issues that we've brought before the Court today. The first issue is whether or not the district court erred in failing to hold an evidentiary hearing on Mr. Cooley's motion to dismiss. The second issue is whether or not the district court erred by denying Mr. Cooley's motion to dismiss on Sixth Amendment speedy trial grounds. Addressing the first issue, it's our position that the district court erred by refusing to hold an evidentiary hearing as it pertains to the motion to dismiss. Counsel, am I right? You never moved for one? You never asked for a hearing? Your Honor, I would disagree with that. We did request. Originally in our filing, we filed a motion to dismiss and a motion for a hearing. Now, in our specific motion, we cited to North Dakota local rule. It was 47.1d. That rule specifically referenced his oral argument. I think what the United States and what the Court rested its hat on is that we didn't specifically mention it as an evidentiary hearing. But what I would note to the Court is that there is no Federal rule under the rules of criminal procedure. There is no rule under the North Dakota local rules that requires us to put in a motion that we are requesting an evidentiary hearing by name. Instead, I think we have to look at the case law and what this Court has said, which it's — which what the Court has said is a district court must hold an evidentiary hearing only when the moving papers are sufficient, definite, specific, and detailed that establish a contested issue of fact. So our position is that we don't have to necessarily put that in our motion. I would put forth that we did request a hearing in our motion. Maybe that was only named oral argument, but that's because that's what the specific local rule requires us to do. So you're saying that under the case law, essentially your motion is baked into a well-stated motion with particularity and facts to support it? Correct, Your Honor. As long as the motion and the memorandum that's supporting the motion has a contested issue of fact, we believe that under this Court's precedent, the district court must hold a hearing whether there's a request or not. Obviously, it would be better practice to put that in there. That's why I was trying to find authority when we were doing that, and that's why we cited it as a motion for oral argument. But it was a request for a hearing within our motion. So in this case, we do believe that our motion was definite and specific, and it did contain contested issues of fact. In fact, the district court judge even acknowledged that there was a contested, at least one contested issue of fact that was contained within our memorandum that differentiated from the United States. If the Court looks at our addendum at page 6, it would be document 352 in the record. It's the district court's order denying our motion to dismiss. And within the motion to dismiss, I believe it's a footnote, the Court said both Cooley and the government assert various and opposing reasons for the delay in their motion. Now, did he specifically say the word fact? No, he did not. But if we have opposing viewpoints as to why a delay occurred as far as a speedy trial claim is concerned, the government saying this is the reason and we're saying this is the reason, and they're different and they're opposing, we believe that's a contested fact that would require an evidentiary hearing. Well, did you proffer anything that you wanted to prove up? Your Honor, in our memorandum, we did put forth many different facts. Now, our memorandum was not supported by an affidavit or declarations at that time because we anticipated that we would have an evidentiary hearing. I would note that Rule 47 of the Rules of Criminal Procedure, it says that with a motion, a party may file an affidavit. And it seems that the district court in this case is requiring us to file an affidavit to prove what's in our memorandum. Well, when did you file your motion for reconsideration that includes the four affidavits? When was that filed? Yes, Your Honor. That was filed, I believe, on January – it was in January. So it was – our motion to dismiss was filed on December 28th. That's a motion to dismiss the indictment? Correct, Your Honor. Okay. Proceed. And then the motion for reconsideration was filed in the middle of January. I believe it was – it might have been January 14th. So you did get the four affidavits before the district court, before it ruled, right? Your Honor, I believe in the affidavits. It shows that the affidavits that we submitted as exhibits, the four affidavits, came after we filed our motion to dismiss. Yeah, but were they before the district court ruled? Pardon my elementary questions. I really don't know. The affidavits were not before the court prior to him ruling on the motion to dismiss. So part of the reason is in the original order that denied our motion to dismiss, the court also denied our hearing. Thank you. So then we filed our motion to reconsideration claiming that there was a mistake. That's all I needed. Go ahead. And then remind me, what did the judge say? He looked at the affidavits at that point, right? Yes, Your Honor, correct. So the judge adopted our four affidavits as evidence. The United States also supplemented the record and filed four exhibits themselves. Now, he did then have what he dubbed a limited evidentiary hearing. Yes. I'm unfamiliar with what a limited evidentiary hearing is because he was limiting us to only presenting evidence on one of the four Barker factors. It's impossible for me to prove a Sixth Amendment speedy trial violation if I can't address with evidence each of the four Barker factors. So we believe that this limited evidentiary hearing that he held, limiting us to only the second Barker factor, was not enough to make up for his lack of holding a full evidentiary hearing. Could he address completely the motion for reconsideration? He implies that in the order. Your Honor, can you rephrase that? It's got a separate order, doesn't he? Yes, a separate order on the motion for reconsideration. And I think he says you had two arguments and he addresses your two arguments, right? Correct, Your Honor. Proceed. Yes. So the two arguments that we had in our motion for reconsideration, the first one is that there was a manifest injustice, I believe, or an error in the fact or of the law. And the other issue was that we were denied an evidentiary hearing. So he did address both those in the motion for reconsideration. Well, you said newly discovered evidence, and I thought that was your four affidavits. Yes, Your Honor. Correct. And that was just one of the points that we raised in our motion for reconsideration. We were also – and one of the primary points that we made in our motion for reconsideration was that we were – this was an error of the law because we were denied an evidentiary hearing. So we put forth that there was a contested issue of fact in our original motion and memorandum. Okay. What exactly did you want to put on evidence about? Yes, Your Honor. The intent was obviously with the speedy trial analysis that we're going to get to, there's four Barker factors. I don't think there's really too much of a dispute between one and number three, and we can kind of get that from the record. But two, which is the reason for the delay, and four, which is the prejudice, whether that's presumed or whether that's actual. Those – I guess we want to present evidence on all of it, whether that's through witness testimony, exhibits, affidavits. Well, you said he had a hearing on number two, so that was already covered. Correct, Your Honor. And I think the affidavits covered that. Now, the problem arose where during our motion for reconsideration, this limited evidentiary hearing that we had, which was kind of combined with our pretrial conference, I started into cross-examination. And this is in the transcript of our private investigator. And I started to ask him about one of the witnesses in the case and whether or not he interviewed this witness. We were getting to that point to show that she did not have memory of this incident or her memory was lacking. That's the prejudice, because such a substantial amount of time has gone on. The United States objected to that point, said that's not relevant. And the judge sustained their objection and said we're limiting this only to point number two, you can't talk about prejudice right now. Even though we put forth that, again, in our original motion, there was contested issues under at least prong two and prong four. I don't know if those necessary. So you're saying there was a witness, is this a defense witness? Your Honor, it was, it would have been potentially a defense witness. I know the United States in the trial in this case did call her as the witness, and it was the main witness. Okay. So she was a prosecution witness. Correct. And you were able to cross-examine her at trial? Ultimately, Your Honor, yes. And I don't. Were you able to establish any loss of memory in the trial cross-examination? Yes, Your Honor. She answered many questions. I don't know. I don't remember. I don't recall. Okay. So we have the record then that you wanted to make. Correct, Your Honor. But that came at trial then. It didn't come prior during our motion to dismiss. So we were deprived of being able to put on evidence for that prejudice prong. And ultimately, the court said, you did not prove prejudice, so this doesn't, you don't win on the Barker factors because we couldn't establish prejudice. Is that the only witness that you wanted, excuse me, to call on the fourth Barker factor at the evidentiary hearing? Your Honor, we also, and I think this is something from the record that the court disregarded, there is another witness in this case that suffered serious, I don't know if it was medical health complications. So there was actually a motion to continue that was filed in November of 2021, talking about how she could not proceed to trial. Was that a co-defendant? One of the people you named was a co-defendant, right? Yes, correct, Your Honor. This was the co-defendant. And was she a cooperator or something? So she was going to be testifying? Yes, Your Honor. My understanding is that she cooperated and she ended up signing a plea agreement on the day that our trial started. And that's why you wanted to present information or evidence at the hearing to show the judge that this was not going to be good evidence, that the delay had caused you prejudice, right? Yes. So then once we move on to the trial, and I think only one of those two testified, correct? Correct. How important was that person's testimony to the case against your client? Yes, Your Honor. So if we're looking at the trial, I believe this case had roughly about eight or nine co-defendants. Out of the eight or nine co-defendants, two people even knew who my client was. One of them was his brother, who's the main name that's on the indictment. The second was the witness whose memory is lacking. Those were the only two that – she was the one that testified that my client traveled from Detroit, Michigan, to North Dakota, to quantities, to selling. So it was a key witness for the government. And, like I said, her memory did show that it was lacking. Now, even if this Court decides that, and I'm going to save the rest of my time for rebuttal, but I will address the speedy trial claim that we have as well. Well, if you want to address that, you need to address it in your opening argument. You can't just kind of sandbag the government. I can quickly address it, Your Honor. Thank you. I mean, if you want to get it on the table, you should at least address it to some degree now and then respond. Go ahead. Thank you. And if this Court decides that an evidentiary hearing – our request is that the Court vacate the judgment, remand this back down for a full evidentiary hearing on the motion to dismiss. But even if this Court decides that there is not – the Court didn't have to have an evidentiary hearing, we still believe that there's enough evidence under the Barker factors to show that there was a speedy trial violation. The Barker factors have four parts. Those parts require the courts to look at the length of delay, the reason of the delay, the assertion of the right, and the prejudice suffered. Going quickly with the first prong, because I don't think there's much dispute here, that is a double inquiry that the Court needs to make. First, whether or not the length of delay was presumptively prejudicial. Twelve months is pretty much the standard that we have. We have a 29-month delay here. I don't think the United States is contesting that. The second is the extent of the delay. And what I would focus on here is this Court has said a 17-month delay is lengthy. If we look at the North Dakota Supreme Court, they've said a 13-month delay is considerable. A 17-month delay is significant. And then if we look at the Eleventh Circuit, they said a 24-month delay was intolerable. So using that same rationale, we have a delay that's longer than 24 months, a 29-month delay, which, using that rationale, would be an intolerable delay. Is it really only 19 months, though, counsel, or 10 months due to continuances by other co-defendants? Go ahead. Your Honor, I think as far as the Sixth Amendment speedy trial claim concerns, it's from the date of the indictment to the trial. I don't think there's any exclusion like the speedy trial act. Proceed. Now, the second portion of the delay is what the Supreme Court called the flag that all litigants seek to capture. And in this specific instance, we believe that the Court erred first and foremost by switching the burden of proof. Now, to my knowledge, this Court has never addressed whose burden of proof it is for the second prong. But if we look at the Sixth Circuit and the Eleventh Circuit, that's the Brown case and the Ingram case, the circuit courts have said because the prosecutor and the court have an affirmative constitutional obligation to try the defendant in a timely manner, the burden is on the prosecution to explain the cause of pretrial delay. It seems as if the Court tried to change this burden, where in its original order they said there is no indication that the government has negligently or intentionally delayed the prosecution. But based on the other court's burden, that's not what the burden is. So in some ways, you're saying it's the government that should have been wanting a hearing as much as you. Correct, Your Honor. Because using that rationale from the Sixth and Eleventh Circuit, they need to put on evidence as to why there is a pretrial delay. And they failed to do that. And the Court seems to just brush that off and say, well, there's nothing in front of me that shows that they were negligent or that there was intentional delay, so I'm just going to call it a wash on that point. And, again, we would ask this Court, I guess, then at that point to adopt the Sixth Circuit and the Eleventh Circuit's rationale. Now, as far as the... I thought there was some evidence, though, that the delay was partly due to this mix-up on the arrest warrant being in the computer. Yes, Your Honor. And partly based on disruption under COVID when people were not probably working as quickly as they would have been in normal times. Wasn't there a record made on that? Your Honor, that record was initially indicated, I guess, in the United States as reply. It was then supplemented after the motion for reconsideration with exhibits. But that argument fails. The government is trying to rest its hat on COVID. But what I would point to the Court is that, you know, I think it's general knowledge that COVID began somewhere around January, February, March of 2020. This indictment came down in August of 2019. So we have anywhere from a three- to six-month gap before anybody here even knew what COVID was or whether COVID even existed at that point. Now, clearly, the United States had no problem arresting the other eight or nine co-defendants. They arrested them all by March of 2020, which is what we would put forth as kind of when COVID really kind of gained traction and things started to close down. This wasn't just defendants that were in North Dakota. They arrested defendants in North Dakota, Seattle, Washington, and right in Detroit, Michigan, where my clients resided for the last eight years and numerous times has provided documentation of what his address was. And this is reflected in his State court case where the courts in the State court were actually sending him plea agreements and criminal judgments outlining where his address was. I see my time's up. If there's any more questions, thank you. Thank you for your time. Mr. Sullivan, we'll hear from you. Thank you, Your Honor. Good morning. Matthew Sullivan from the Department of Justice on behalf of the United States, and may it please the Court, the defendants' arguments have no merit because, one, the district court did not abuse its discretion when it declined to hold an evidentiary hearing on his motion to dismiss. And, two, the defendant's Sixth Amendment speed trial rights were not violated by any delay between his indictment and his trial. And to start with the evidentiary hearing issue, and to Judge Benton, your point, the defendant did not request an evidentiary hearing here. And while I would agree there is no explicit rule in the Federal criminal rules or the Federal criminal law in North Dakota, I think it does go to the question of whether or not the district court abused its discretion in declining to hold a hearing. And I think one of the cases kind of treat that as a make-wait, though, counsel, right? Don't our cases, Bacheopu and some others, treat that as a make-wait factor? Yes. In Bacheopu, the Court did consider whether or not. Tell me what a limited evidentiary hearing is. Is there any law on what a limited evidentiary hearing is? Well, I think that is within the Court's discretion to hold an evidentiary hearing, and I think the Court was signaling to the parties and to the defendant that what did the Court say to the parties, not signal? What did the Court say the limited evidentiary hearing was about? The Court, in its order scheduling the limited evidentiary hearing, said it would focus on the purported newly discovered evidence, the affidavits that were included as part of the defendant's reconsideration motion. So I think it was the — Well, his order says the hearing was about the reasons for the delay. Right. That's correct, Your Honor, which the four affidavits that were included as — Why don't you just say what the topic of the hearing was? Correct. What was the topic of the hearing? It was the reasons for the delay as it relates to the factual affidavits presented by the defendant. So the Court, I think, was clear that we're talking about the reasons for the delay, not about the prejudice issue. Prejudice doesn't appear in either the defendant's reconsideration motion or in the Court's order setting forth and scheduling the limited evidentiary hearing. So I think the Court was clear that if there are purported contested issues of fact, it only then must hold an evidentiary hearing. And so once it has these four affidavits and, you know, an apparent contested issues of fact, the district court then scheduled the hearing on those contested issues of fact. I would note that the affidavits all centered around where the defendant was living between the time of the indictment and the arrest. And that's not an issue that the government is really contesting here. The government is not contesting that the defendant had fled to Canada or Mexico or is under an alias. So even to the extent there were these factual affidavits, I think kind of a close reading of them, whether or not an evidentiary hearing was actually required because they raised or created contested issues of fact I think is not quite the case. Nonetheless, the district court was clear that we're going to talk about the reasons for the delay, that the second Barker factor, that is going to be the scope of the evidentiary hearing in this case. And so when, during the hearing, the defendant kind of moved beyond that scope, the government objected, and I think the Court correctly noted that this was limited to the reasons for the delay because that is the contested issue of fact. And so I think the Court properly applied its discretion to both hold the evidentiary hearing and to limit it to actual contested issues of fact. And so I think to the extent that there was other evidence related to prejudice, that wasn't on the table, you know, for the limited evidentiary hearing. But also, those aren't contested issues of fact. I think the government isn't contesting that Jamie Carlson, one of the government's main cooperating witnesses, had acknowledged memory issues. That's not a contested fact that needed to be resolved by the Court, you know, at an evidentiary hearing. Carlene Counts, the cooperator who had the health issues, who was on the government's witness list, was a government witness who ultimately didn't testify given her health issues. Would it not be a contested issue of fact the extent of the memory issues? Or if you can have, well, yeah, I don't really remember quite so much, or a complete medical issue, something happens and I just don't remember anything. It seems to me there is some wiggle room in there for a disagreement on how much something like a memory loss or memory impairment or physical impairment would impact a witness's ability to recite what they saw, what they remembered, good or bad, for the defendant or the government. Well, I think it being a government witness, I think, would prejudice the government if, to the extent there is a prejudice issue under Barker. But you don't know, right? Well, but also, I think Your Honor, Your Honor makes a good point, but none of those specifics were ever articulated by the defendant in his, either in his motion to dismiss or in his reconsideration motion. In the motion to dismiss, the defendant actually said that he can't identify any prejudice and that it should be presumed. Didn't even try to articulate anything. It was only in his reply motion to dismiss that there were a couple conclusory sentences about Jamie Carlson's memory and Carlene Counts' health issues. So I think, you know, even when you identify these issues, kind of what may or may not be contested there was never articulated by the defendant. So, but I think even stepping back even, you know, even more broadly, I don't think there's a prejudice issue. And I think, I think as Judge Carlson or Judge Benton noted, Mr. Justinger on cross-examination asked Ms. Carlson about her memory issues. So I think to the extent that a memory issue prejudices the government, that came out at trial, I think to the benefit of the defendant's case on cross-examination. That's what she doesn't remember, right? Well, that's correct, Your Honor. But also, we don't, to the extent that there are memory issues that the government would contest, if there are, if there are memory, like, the government's kind of punching in the dark there because we're not sure. When we hear memory issues, we think, okay, she's one of our main cooperating witnesses. A witness's memory issues obviously prejudices our case because we're trying to, it's our burden to prove the case. To the extent that there is a memory, some event that happened that she no longer remembers that would benefit the defendant and somehow prejudices him, I don't, like, I don't know what that is. And I don't think that's ever been identified either. Well, he should know. He should be in a position to know if she. I agree, Your Honor. I think. If she formerly knew something that would help him, I would think maybe he could put on evidence himself. But maybe not. I don't know. I agree, Your Honor. But I think we don't even know what this lack of memory is and if it would actually prejudice the defendant or would just prejudice the government. I mean, Ms. Carlson was one of two of the kind of, there were several cooperators in the case, but she was one of two of the main cooperators, the centerpieces of the government's case. So it's, without kind of more detail or any articulation from the defendant, it's hard for the government to know how a memory issue of our main cooperator would somehow prejudice the defendant. I think everyone, I think, would rightly assume that it would prejudice the government because it's the government's burden to put on that evidence. And so that's why I think the prejudice issue just was not within the scope of the evidentiary hearing, was not ripe to the evidentiary hearing, and I'm not sure even taking a further step back, there is a contested issue of fact. Even after the briefing before this Court, whether there's a contested issue of fact still to resolve as to the prejudice issue. And, you know, to Your Honor's questions about the evidentiary hearing and whether there's a rule that you need to request one, Your Honor noted in Pacheco-Apoo that the Court noted that the defendant there had not actually requested an evidentiary hearing. But even in this case, the district court, before it issued its written order on the motion to dismiss, issued it on, I think, a Tuesday or Wednesday after the MLK long weekend. The Friday before, there was a status conference because trial was about 10 or 12 days out, and the Court, you know, dealing with some pretrial issues, but noted for the parties, look, there's a long weekend ahead, I don't want to let you all know, I'm going to deny the motion to dismiss, and a written order will probably come out later this week, but since we're getting close to trial so the parties can prepare and plan, I'm going to deny the motion, right? So we had not held an evidentiary hearing. We had not held oral argument as requested in the defendant's motion to dismiss. So to the extent that the defendant was requesting either oral argument or an evidentiary hearing or any sort of hearing, the Court told the parties that he was going to deny the motion without a hearing, and the defendant raised no objection to that. And so I think to the question of whether there was actually a request before the district court, and the district court abused its discretion by failing to hold an evidentiary hearing, I think that goes into, you know, the assessment of how the district court acted below and whether it was. Well, your time is about half gone, and what bothers me about this case is the district court rules, tell me if I'm wrong, no evidence in the record of the government neglecting or intentionally on the eight months' time that's out of the system, NCIC system or whatever it is, how can that be right when you, the government, say it's human or technical error, right? Yes. So the evidence in the record. Human and technical. Error is like negligence to me. I respectfully disagree, Your Honor. Okay. Tell me. An error, I think it was a mistake. It fell out of the system, and the government acknowledges that. But I think they didn't mistake a word for negligence. Well, I think you can tell me the words here. Well, I respectfully, Your Honor, I think it may have been negligence if it fell out of the system and no one was checking, or the FBI didn't immediately put it back into the system, and the process continued forward there. So I think looking at whether or not the government was negligent in arresting The warrant is going to fall out of the system. What does that even mean? So I think the warrant is entered into NCIC. So if it's at a traffic stop or you're running by, it's going to pop up. I understand that, but how does it fall out of the system without human intervention? So the record is solid on that. Whether it was human or technical error, how it fell out of the system, the government wasn't It was removed, right? That's also in the government's papers. It was removed, and they even know the date, February 28, 2020. Correct. Right? You didn't investigate how this happened? You didn't get somebody from the FBI to explain it? So there is an e-mail from an FBI agent, I think this is Exhibit 1 to document or reconsideration motion response document 364. The case agent who looked into this issue and tried to ascertain what had happened, he was not able to ascertain whether it was human or technical error, the reason for it falling out of the system. And so that's the state of the record there. But I think Now, the people who checked used the terms removed from the record on February 20, 2020, right? And they also used the terms human or technical error, right? Yes, Your Honor. Okay, proceed. Yes. I don't know what you mean by technical error that didn't involve a human. You mean like, I don't understand that. There's unfortunately not more detail, and I think the FBI agent included all the detail he was able to gather in terms of why it fell out of the NCIC system. Whoever did it might not have been forthcoming in how it happened. That's correct, Your Honor. But I think looking at the larger question, and even I would submit there was not negligence in this case, but even looking at the case of the United States v. Sims, where the government, where the court here ruled that, found that the government for about a 12-and-a-half-month period was negligent by requesting continuous extensions on an interlocutory appeal, which extended and delayed after trial. Even in that case, in the 12-and-a-half months, which is roughly similar to the 13 months here between the arrest of the last co-defendant and the arrest of the defendant in this case, even there where the court believed there was negligence. And again, I don't believe that's the case. Well, the error in the NCIC here was not 13 months. It was shorter. Eight months, right? Correct. So it was the — If that was deemed to be negligence, it would be an eight-month period due to negligence. That's correct. But from the kind of the time of the — Removal. The removal to the time that the defendant was ultimately arrested, assuming that — Oh. I didn't realize you were going to concede the other five-and-a-half months were due to negligence. Well, I don't believe any of it is negligence, Your Honor, but I'm saying — No, but I don't understand why you're bringing up 13-and-a-half months of negligence when we were only talking about the removal from NCIC for eight months. Yeah. And let me back up something. The 12 months in this other case, ours is only — ours is 13-and-a-half. That's close. I would have thought you'd say, ours is only eight months of negligence. So I think your point is — Maybe I'm missing while you're conceding the other five-and-a-half. Go ahead. The total time is 29 months. And so I think if you look at the component parts, during the first approximately six months, the government is out there arresting all the code events in this case. There's the middle period, but just the last period, the last 10 months, was post-arrest, time that was properly excluded under the Speedy Trial Act. So that leaves you — that's where you get kind of that 13-month period in the middle there where it has fallen out of NCIC, it's put back in in October of 2021, and then it takes the marshal several months to then go and arrest the defendant. So even to Your Honor's point that if it was — it fell out because of negligence, Judge Gallatin, you're correct, that that would only go from prejudice. Removed due to negligence. Go ahead. Removed due to negligence. I thought your case — your evidence says removed. Go ahead. But even looking at the kind of longer period of time, that 13-month period of time, whether it's all negligence, whether it's part negligence and part just getting things back on track, I think looking at that period of time, this Court has said that it is — even if there is negligence, that's still too short of a time to presume prejudice under Barker. And so I think — But what was the reason for not getting him at the same time as the rest of them? So there's five-and-a-half, six months. I think, according to defense counsel, there were other folks who lived maybe Detroit also, like in the same area. What was the record on why this is the one person who couldn't be found during that first time period? Your Honor's correct that there were other co-defendants who were arrested in Detroit. All of them. Not all of them. I'm sorry. All were arrested. I'm sorry. There were, I think, one or two. I think there may have been two who were arrested in Detroit, Michigan. The record is silent as to why, you know, certain co-defendants were arrested before others. I think there is information in the record from the Marshal Service that even though they have, you know, they have an address, they need to confirm the address for someone before they go out and arrest them so they're not knocking on the wrong door and what have you. But in terms of the order and the selection process, that record is silent. Well, not even order and selection. Just it seemed like all of the evidence in front of the district court was this man had lived in the same place for eight years and there was confirmation of where he lived if they looked. I was just wondering, not necessarily that the Marshals have to go in a particular order, but there you are in Detroit. Why can't you get him? And I wondered if there was any explanation. To that point, not specifically, although I do know that the defendant and these other co-defendants were not at the same address. And I don't, I'm not even sure if they even knew each other. So, but as to why the Marshals arrested some and not others in Detroit, the record is silent there. I see I am out of time. If the Court has any further questions. So you're saying that during the first five months the other defendants were arrested, the record is silent as to why this man wasn't arrested during that same period. And then at that, after the five months, the record was removed and that's why no action was taken until October. That's correct, Your Honor. October there was processing delay or whatever you want to call it to have the Marshals take action between October and the arrest date. That's correct. It was October 2020. I think there, as is in the record, limitations in terms of staff and ability to go out and arrest people due to COVID and limitations on prison space and things to that nature. What does the record show about how the removal from NCIC was discovered? As to how, it was just that the FBI determined that it had fallen out of NCIC. Kind of the exact process or how they determined that, the record is not. The FBI said it was removed. They found it. The FBI, I think, checked NCIC, saw that it was not in there and then put the warrant back in that same day. You mean some agent checked why hasn't this guy been arrested and found it's not in, it wasn't, you don't even know that. As to, I believe the record is silent as to why the check happened in October of 2021, but that it did happen and then was put back into the year 2021. All right. Thank you for your time. Thank you, Your Honor. Did you use all your time, Mr. Jestinger? Do you care to make any rebuttal? If I could, Your Honor. We'll give you one minute if you'd like. Your Honor, with the short amount of time, I do appreciate it. I will just focus on the two main issues here. First, as far as the negligence is concerned, that's what this Court just focused heavily on with the United States. I think this Court looked at negligence in the Arenas Luna case. In that case, the police testified that the case slipped through the cracks. Our position would be that's no different than this case. It appeared from February to October where the arrest warrant slipped through the cracks. Why did it get removed? How did it get removed? We don't know. Is that case in your brief, counsel? Yes. Yes, Your Honor. Sorry. Arenas, go ahead. Police. Yes. And then what the Court also recognized is that even though in the Arenas Luna case, they did discover the error, just like they discovered the error here, they also recognized that in that case law enforcement entered the arrest warrant and still took four months to then go arrest somebody after they put it in NCIC. Now, here, they recognize Mr. Cooley's arrest warrant was missing in October, and they didn't take four months. They took five months, so even longer. And this Court in Arenas Luna did say that the government was negligent, allowing it to slip through the cracks. So unless there's any other questions, I see my time's up. Thank you very much. Very well. Thank you for your argument. The case is submitted and the Court will file a decision in due course. Counsel are excused. Madam Clerk, please call the next case for argument. Yes, Your Honor. The fourth case for argument is Aaron Nygaard v. Tricia Taylor et al.